

FILED

FEB 1 2 2010

CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA

        Plaintiff,

v.                           Criminal Action No. 2:09cr49

RONALD POULIN,

        Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Motion for Preliminary Order of Forfeiture filed by Plaintiff United States of America ("Government"). After briefing by the parties, the Court conducted a hearing on January 11, 2010. By separate order today, the Court granted the Government's motion, in part, and entered a preliminary order of forfeiture. Set forth in this Memorandum Opinion are the reasons for issuing such order.

### I. PROCEDURAL BACKGROUND

On April 3, 2009, a federal grand jury returned a forty-five count indictment charging Defendant, Dr. Ronald Poulin ("Poulin" or "Defendant"), with Health Care Fraud (Count 1), Statements Relating to Health Care Fraud (Counts 2 - 44), and Alteration of Records to Obstruct Investigation (Count 45). As described more fully in this Court's Opinion and Order of Nov. 24, 2009, the allegations focused on Poulin's billings to the Government's Medicare and TRICARE health insurance programs. United States v. Poulin, No. 2:09cr49,

2009 WL 4249900 (E.D. Va. Nov. 24, 2009). Also included in the Indictment was a forfeiture allegation advising the Defendant that, if he was convicted of the health care fraud offense in Count One, the Government would seek forfeiture of various property pursuant to 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853(p), and Rule 32.2 of the Federal Rules of Criminal Procedure.

More specifically, the Indictment's forfeiture allegation states that the Government will request forfeiture of any "property, real or personal, which constitutes or is derived from gross proceeds traceable to [the health care offense in Count One]." (Indict. at 10.) The allegation goes on to state that "the property subject to forfeiture includes but is not limited to . . . a sum of money of at least $850,000.00, which is the total amount of gross proceeds of the offense charged in Count One." (Indict. at 10.) The allegation further provides that additional property subject to forfeiture includes Defendant's investment and bank accounts, real property, vehicles, recreational boat, and medical practice.

Prior to trial, the Government dismissed Counts Twenty-two (22) through Thirty-six (36), Count Forty (40), and Count Forty-one (41). On November 17, 2009, a jury found the Defendant guilty of the twenty-eight (28) remaining counts. The parties did not raise any additional issues following the verdict and the Court excused the jury. The Court then scheduled sentencing for March 15, 2010.

On December 14, 2009, the Government submitted a Motion for Preliminary Order of Forfeiture. Defendant responded, opposing such motion, on December 28, 2009. The Government filed its reply on December 30, 2009. The Court heard oral argument on the Government's motion on January 11, 2010, in order to resolve the matter "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final," as is required by Rule 32.2(b)(2)(B) of the Federal Rules of Criminal Procedure. By separate order, the Court today entered a preliminary order of forfeiture accompanied by this Memorandum Opinion.

## II. DISCUSSION

The Government moves for a preliminary order of forfeiture pursuant to 18 U.S.C. § 982(a)(7). The Government primarily requests a money judgment in the amount of $1,326,852.70, which it claims represents the gross proceeds traceable to Defendant's health care fraud. Because the Government has been unable to locate any such proceeds, it also moves for an order requiring Defendant to forfeit substitute assets up to the unavailable amount, pursuant to 21 U.S.C. § 853(p). As a preliminary matter, the Court observes that successfully navigating the criminal forfeiture statutes can be a challenging endeavor. For this reason, before addressing the Government's forfeiture request in this case, the Court begins with a brief overview of the relevant

forfeiture statutes and procedural rules.

## A. Relevant Law[1]

Section 982(a)(7) requires a court to order a defendant convicted of a federal health care offense to forfeit property that constitutes, or is derived from, gross proceeds traceable to the violation.[2]  18 U.S.C. § 982(a)(7).  The plain language of the statute provides that such forfeiture is mandatory.  Id.; see United States v. Patel, No. 06-60006, 2009 WL 1579526, at *20 (W.D. La. June 3, 2009) ("The mandatory language of this statute leaves the Court absolutely no discretion in imposing this portion of the sentence.").  Although § 982 does not itself set forth the procedures for forfeiture, it expressly incorporates the provisions in 21 U.S.C. § 853.[3]  18 U.S.C. § 982(b)(1).  In addition to providing guidance as to the proper means by which forfeitable property should be seized and disposed of, § 853 defines, more fully than § 982, what property is subject to forfeiture.  21

---

[1]  For a discussion on the history of criminal forfeiture see United States v. Croce, 334 F. Supp. 2d 781, 785-88 (E.D. Pa.), amended by, 346 F. Supp. 2d 492 (E.D. Pa. 2004), rev'd on other grounds, 209 Fed. Appx. 208 (3d. Cir. 2006).

[2]  "The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense."  18 U.S.C. § 982(a)(7).

[3]  Section 982(b)(1) does not incorporate subsection (d) of § 853, which would otherwise establish a rebuttable presumption favoring the government under certain circumstances.

4

U.S.C. § 853(f), (h), & (p). Section 853 also directs that the statutory language must be "liberally construed to effectuate its remedial purposes." Id. at § 853(o).

The procedure for forfeiture of assets in a criminal case such as this is further governed by Federal Rule of Criminal Procedure 32.2.[4] In order for a court to enter a judgment of forfeiture following a finding of guilt, the government must first have notified the defendant, either through the indictment or the information, of its intent to seek forfeiture as part of any sentence. FED. R. CRIM PRO. 32.2(a). If this notice requirement is satisfied, the government may then pursue a forfeiture order by demanding either a money judgment, specific property, or substitute property. See FED. R. CRIM PRO. 32.2(b)(1)(A) & (b)(2)(A); United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999) (recognizing that the government may seek a personal judgment, specific property, or substitute property); United States v. Davis, 177 F. Supp. 2d 470, 484 (E.D. Va. 2001) (relying on Candaleria to find that money judgments, specific property, and substitute property are all properly forfeitable). Despite this broad procedural grant, the court must "determine what property is

_____

[4]   Rule 32.2 was amended on December 1, 2009. In accordance with the Supreme Court's March 26, 2009 order, and 28 U.S.C. § 2074(a), this Court will apply the amended rule to these proceedings "insofar as just and practicable." Whenever there is a substantive difference between the pre-Dec. 1, 2009 rule and the post-Dec. 1, 2009 rule, the Court will address such differences. Otherwise, the Court will simply refer to the rule without comment.

subject to forfeiture under the *applicable statute.*" FED. R. CRIM.
PRO. 32.2(b)(1)(A) (emphasis added); <u>see also</u> <u>United States v.</u>
<u>Surgent</u>, No. 04-CR-364, 2009 WL 2525137, at *7 (E.D.N.Y. Aug. 17,
2009) (finding that a statute must authorize the form of forfeiture
sought because Rule 32.2 only governs procedure). Furthermore, in
cases where the government seeks specific property, "the court must
determine whether the government has established the requisite
nexus between the property and the offense." FED. R. CRIM PRO.
32.2(b)(1)(A). On the other hand, when the government seeks a
money judgment, "the court must determine the amount of money that
the defendant will be ordered to pay." <u>Id.</u>

To prevail on a motion requesting forfeiture under § 982, the
government must prove by a preponderance of the evidence that
forfeiture of the subject property is warranted. <u>United States v.</u>
<u>Cherry</u>, 330 F.3d 658, 669-70 (4th Cir. 2003). The government may
meet this burden "based on evidence already in the record . . . or
information presented by the parties at a hearing after the verdict
or finding of guilt." FED. R. CRIM. PRO. 32.2(b)(1)(B). In
addition, because the traditional rules of evidence do not
typically apply to sentencing proceedings, courts may consider
hearsay when determining forfeiture so long as it is sufficiently
reliable. <u>See</u> <u>id.</u> ("The Court's determination may be based on . .
. any other evidence or information . . . accepted by the court as
relevant and reliable"); <u>United States v. Ivanchukov</u>, 405 F. Supp.

6

2d 708, 709 n.1 (E.D. Va. 2005) (citing <u>United States v. Higgs</u>, 353 F.3d 281, 324 (4th Cir. 2003) and <u>United States v. Gaskin</u>, No. 00-CR-6148, 2002 WL 459005, at *9 (W.D.N.Y. Jan. 8 2002), <u>aff'd</u>, 364 F.3d 438 (2d Cir. 2004)).

The statutes governing forfeitures relating to health care fraud provide that, in the event that the government is unable to recover "property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense," it may seek forfeiture of substitute property under 21 U.S.C § 853(p).[5] <u>See</u> <u>United States v.</u>

---

[5] "Forfeiture of substitute property

(1) In general

Paragraph (2) of this subsection shall apply, if any property described in subsection (a) as a result of any action of omission of the defendant-- (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty.

(2) Substitute property

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraph (A) through (E) of paragraph (1), as applicable.

(3) Return of property to jurisdiction

In the case of property described in paragraph (1)(C), the court may, in addition to any other action authorized by this subsection, order the defendant to return the property to the jurisdiction of

Wingerter, 369 F. Supp. 2d 799, 805 (E.D. Va. 2005) (finding that property forfeitable under § 982 includes, by incorporation pursuant to § 982(b)(1), substitute property described in § 853(p)). Section 853(p) applies if, "as a result of any act or omission of the defendant," the property originally sought by the government under § 982 either: (1) "cannot be located upon the exercise of due diligence"; (2) "has been transferred or sold to, or deposited with, a third party"; (3) "has been placed beyond the jurisdiction of the court"; (4) "has been substantially diminished in value"; or (5) "has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p)(1). If these conditions are met, a court must order a defendant to forfeit substitute property "up to the value of any property" originally sought. Id. at § 853(p)(2). As is the case under § 982, the government must prove its entitlement to forfeiture of substitute property by a preponderance of the evidence. See United States v. Tanner, 61 F.3d 231, 234 (4th Cir. 1995) (holding that the preponderance of evidence standard applies to forfeitures sought pursuant to § 853).

## B. Forfeiture Request

The Government seeks a money judgment in the amount of $1,326,852.70 for the gross proceeds traceable to the Defendant's

---

the court so that the property may be seized and of forfeited." 21 U.S.C. § 853(p).

8

health care offense. Before the Court may enter a preliminary order of forfeiture, it must first determine if Congress has statutorily authorized the remedies requested, whether forfeiture of the property sought is warranted, and if the procedures for awarding such remedies have been followed. Poulin mounts several objections to the Government's Motion for Preliminary Order of Forfeiture. While the Defendant's arguments ultimately fail, the Court cannot grant the Government's motion for a general money judgment for the amount of money fraudulently obtained by Defendant. However, the Court can issue a limited money judgment authorizing the Government to seize only those funds that can be traced to the commission of the health care fraud. As the Government readily admits, no such money can be identified in this case. Nevertheless, the Government remains entitled to $1,326,852.70 as a result of the Defendant's crime. Accordingly, the Government's request for forfeiture of substitute property in partial satisfaction of this amount is granted.

## 1. Variance Between the Forfeiture Allegation and the Forfeiture Requested is Not Fatal

### a. notice

As an initial matter, the Court must determine if the Defendant received adequate notice of the Government's intent to seek forfeiture following his conviction. The forfeiture allegation contained in the Indictment advises Defendant that, if found guilty, the government may seek forfeiture of a "sum of money

9

of at least $850,000." (Indict. at 10-11.) Defendant now complains that the Government's decision to increase the amount sought to $1,326,852.70 constitutes an improper constructive amendment with substantial prejudicial effect because Defendant only received notice that the Government would seek a money judgment in the amount of $850,000.

The Defendant was indicted on April 3, 2009. Because Rule 32.2(a), as it was written prior to the December 1, 2009 amendments, contains no requirement for notice of the amount sought, a pre-Dec. 1, 2009 forfeiture allegation need not even specify the amount of any money judgment sought in order to comply with the rule and adequately notify a defendant of the Government's intent to pursue forfeiture.[6] FED. R. CRIM. PRO. 32.2(a) (2008); see also United States v. Peters, 257 F.R.D. 377, 838 (W.D.N.Y. 2009) (finding language that notifies defendant of forfeiture without specifying the amount or property sought sufficient to satisfy Rule 32.2); United States v. Kalish, No. 06 Cr. 656(RPP), 2009 WL 130215, at *9 (S.D.N.Y. Jan 13, 2009) (finding sufficient an allegation stating the government will seek "the amount of proceeds obtained as a result of the charged fraud"); United States v. McKay, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) ("The Government

---

[6] "A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." FED. R. CRIM. PRO. 32.2(a) (2008).

10

is not required to provide a list of the property sought or the exact amount of the Defendant's interest in the property.").[7] Therefore, because the Government had no obligation to include any amount sought, the detailed forfeiture allegation provided in this case more than meets the minimal pre- (and post-) Dec. 1, 2009 notice requirements necessary to advise Poulin of the Government's intent to seek forfeiture.

### b. variance

The Defendant also argues that, having alleged a specific forfeiture amount, the Government is precluded from seeking a different amount. This argument fares no better than the first. The Government's request for forfeiture in the amount of $1,326,852.70 does not undermine the efficacy of the language in the Indictment's forfeiture allegation. The Indictment states that the Government will seek "a sum of money of *at least* $850,000.00." (Indict. at 10.) (emphasis added). Defendant was thus on notice of the *minimum* forfeiture amount the Government would seek. Defendant claims that even if the case law allows the Government to allege forfeiture without specificity, because the Government chose to provide some detail in the Indictment, it must be barred from later increasing the forfeiture amount. This argument reflects a

---

[7] The December 1, 2009 amendments to Rule 32.2 make clear that a forfeiture allegation need not specify the property or amount of money judgment being sought. As the Advisory Committee Notes point out, this change is consistent with lower court decisions and the 2000 Committee Note.

selective reading of the Indictment, which clearly advises Defendant that the amount subject to forfeiture is *at least* $850,000.  See United States v. Segal, 495 F.3d 826, 838-39 (7th Cir. 2007) (finding that a variance between the forfeiture amount alleged and the amount ultimately requested was not fatal because the phrase "at least" preceded the amount alleged in the indictment); United States v. Marcello, No. 02 CR 1050-2, 2009 WL 931039, at *1 (N.D. Ill. Apr. 6, 2009) (finding that a variance between the forfeiture sought and the amount alleged was not fatal when the indictment states that the items subject to forfeiture "include but are not limited to" the dollar amount listed); United States v. Warshak, No. 1:06-CR-00111, 2008 WL 2705044, at *5 n.2 (S.D. Ohio July 8, 2008) ("[T]he government was within its rights to increase the amount it seeks in forfeiture based on its discovery of new information.").

A claim that the government's case improperly varies from what is alleged in the indictment typically arises in relation to the evidence offered by the government at trial.  Such a variance is fatal if it "either surprises the defendant at trial and hinders the preparation of his defense, or . . . exposes him to the danger of a second prosecution for the same offense."  United States v. Kellam, 568 F.3d 125, 133 (4th Cir. 2009) (alteration in original) (citation omitted).  Even if such a variance argument applied to forfeiture proceedings, which the Court does not here decide, it is

difficult to imagine how the Government's decision, to provide Defendant with more information than that to which Rule 32.2 entitles him, could "surprise" him, "hinder[]" his preparation, or expose him to a second prosecution.

For the reasons stated above, the court finds that the forfeiture allegation contained in the Indictment satisfies the notice requirement of Rule 32.2. As also explained above, Defendant's assertion, that the forfeiture request improperly varies from the forfeiture allegation, must fail. As a result, the Government is free to pursue a preliminary order of forfeiture against the Defendant.

## 2. Forfeiture in the Form of a Money Judgment is Authorized

When considering a request for forfeiture, the Court must determine whether Congress has actually authorized forfeiture of the items requested. In this case, the Government seeks a money judgment pursuant to § 982(a)(7) of Title 18. As noted above, this section approves forfeiture of "property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable" to the health care offense. 18 U.S.C. § 982(a)(7). Accordingly, the Court must decide whether forfeiture in the form of a money judgment falls within this statutory language.

At first glance, it may appear that Congress's use of the word "property" precludes the Court from ordering forfeiture of a money

13

judgment in this case. Indeed, at least one district court has found that forfeiture of money judgments and forfeiture of specific property are distinct remedies, and that a statute's reference to "property" demonstrates that Congress only authorized the latter. Surgent, 2009 WL 2525137, at *6; see also United States v. Day, 416 F. Supp. 2d 79, 89-91 (D.D.C. 2006) (holding that money judgments are not permitted under § 981(a)(1)(c) because such remedies are not expressly authorized by the statutory language), rev'd in part, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008); cf. United States v. Croce, 334 F. Supp. 2d 781, 794 (E.D. Pa.) (holding that § 982(a)(1)'s use of the word "forfeit" precludes non-specific money judgments that compel defendants to turn over property they do not own); amended by 346 F. Supp. 2d 492 (E.D. Pa. 2004), rev'd, 209 Fed. Appx. 208 (3d. Cir. 2006) (relying on United States v. Vampire Nation, 451 F.3d 189, 202-03 (3d Cir. 2006)). Having found numerous decisions endorsing the use of money judgments unpersuasive, the Surgent court held that "[b]ecause Congress knows how to explicitly authorize and require the imposition of a personal money judgment in a forfeiture proceeding . . . the failure to do so in § 982 . . . [was] intentional rather than inadvertent." Surgent, 2009 WL 2525137, at *16.

Although some of the arguments in the Surgent opinion are compelling, such reasoning does not extend to the instant case. In Surgent, the government sought forfeiture after a jury found the

defendant guilty of money laundering. <u>Id.</u> at *2. The applicable forfeiture statute in such circumstances is § 982(a)(1), which applies when a person is convicted of laundering monetary instruments (18 U.S.C. § 1956), engaging in transactions involving criminal derived property (18 U.S.C. § 1957), or directing an unlicensed money transmitting business (18 U.S.C. § 1960). 18 U.S.C. § 982(a)(1). Section 982(a)(1) permits courts to order forfeiture of "any property, real or personal, involved in such offense, or any property traceable to such property." <u>Id.</u> As mentioned above, the <u>Surgent</u> court interpreted the word "property" as limiting forfeiture to only specific property, and, necessarily, excluding orders for money judgments.

The forfeiture statute that applies to health care offenses in § 982(a)(7), however, is markedly different from that which applies to cases involving money laundering. Whereas § 982(a)(1) authorizes forfeiture merely of "property, real or personal, involved in [the underlying] offense, or any property traceable to such property," § 982(a)(7) permits forfeiture of "property, real or personal, that constitutes or is derived . . . from the *gross proceeds*" resulting from the commission of the crime. 18 U.S.C. § 982(a)(1) & (a)(7) (emphasis added).

"Proceeds" are normally thought of as money. <u>Black's Law Dictionary</u> 1222 (7th ed. 1999) (defining "proceeds" as "[t]he value of land, goods, or investments when converted to money; the amount

15

of money received from a sale."). The statute's reference to real or personal property constituting "gross proceeds" reflects a Congressional intent for government to be able to obtain money judgments against such health care offense defendants rather than having the term "property" interpreted strictly to include only real property (i.e., land) and personal property (e.g., any movable property, or intangible property, such as bank accounts, other than real property).[8] By including such language, Congress in essence expanded the definition of property to include money. Indeed, it is difficult to conceive of property that would "constitute . . . gross proceeds" from a health care offense other than the actual money obtained illegally.[9] 18 U.S.C. § 982(a)(7). Thus, despite the statute's use of the word "property," its reference to "gross proceeds" contemplates forfeiture not only of any specific property derived from such proceeds, but also of a money judgment for the full amount of those proceeds traceable to the health care offense. Accordingly, although Congress may not have explicitly used the

---

[8]     Defining personal property to include money is not necessarily unusual. In <u>Russello v. United States</u>, while assessing the meaning of the word "interest," the Supreme Court included profits and proceeds within the meaning of personal property. 464 U.S. 16, 21 (1983) ("It is thus apparent that the term "interest" comprehends all forms of real and personal property, including profits and proceeds.").

[9]     If Congress intended for "property" under § 982(a)(7) to merely describe as forfeitable any bank accounts holding the gross proceeds resulting from a health care offense, § 982(a)(7) would instead resemble (a)(1)'s general description of offense property, or would use a word such as "contains" rather than "constitutes."

16

words "money" or "money judgment" to authorize forfeiture in the form of a money judgment, a logical reading of § 982(a)(7) supports such a result.[10]

The conclusion that money judgments are authorized under § 982(a)(7) is further supported by the requirement that the forfeiture statute be "liberally construed to effectuate its remedial purposes."[11] Interpreting § 982(a)(7) to only allow forfeiture of non-money property would eviscerate the statute's goal of retrieving the "gross proceeds" individuals obtain from health care offenses and ensuring that defendants do not profit from their crime.[12] This is particularly true in the context of

___

[10] Although not specifically ruling on the propriety of money judgment orders, in United States v. McHan, the Fourth Circuit Court of Appeals found that money from a drug operation could be ordered forfeited even as "*property* used, or intended to be used, in any manner or part, to commit, or to facilitate the commission" of the criminal enterprise. 101 F.3d 1027, 1042-43 (4th Cir. 1996) (quoting 21 U.S.C § 853(a)(2)) (emphasis added), cert denied, 520 U.S. 1281 (1997).

[11] Section 853 of Title 21 was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 to permit forfeiture in drug offense cases under that title. Pub.L. 98-473, § 303, 98 Stat. 2044. Section 982 of Title 18 provides for forfeiture for several additional offenses, including health care offenses. Rather than repeating the provisions already listed in § 853, Congress simply incorporated the provisions of § 853, other than subsection (d), into § 982. Accordingly, both forfeiture statutes must be "construed liberally to effectuate [their] remedial purposes" consistent with § 853(o). 21 U.S.C. § 853(o).

[12] In Surgent, the court recognized the important difference between § 982(a)(1), which focuses solely on property, and statutes, such as § 982(a)(7), which focus on proceeds. 2009 WL 2525137, at *12.

17

health care fraud, which often only involves the receipt of money, and not property in the traditional sense.[13]

Therefore, the Court finds that § 982(a)(7) authorizes forfeiture in the form of a money judgment for the gross proceeds traceable to the Defendant's health care offense.

### 3. Forfeiture of a Limited Money Judgment is Appropriate

Having decided that money judgments are authorized under § 982(a)(7), the Court must next (1) assess what amount of money "constitutes . . . gross proceeds" from the Defendant's health care offense, and (2) determine whether the Government has identified any money "traceable to the commission of the offense." 18 U.S.C. § 982(a)(7). The first step requires the Court to identify the amount of forfeiture to which the Government is entitled. The second step, addresses "how the [G]overnment may go about seizing property in satisfaction of that [] amount." United States v. Voigt, 89 F.3d 1050, 1084-85 (3rd Cir. 1996); see also United States v. Misla-Aldarondo, 478 F.3d 52, 74 (1st Cir. 2007)

---

[13] Moreover, it is broadly accepted as a canon of construction that a court should read a statute to give effect to all of its parts. See, e.g., TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause sentence of word shall be superfluous, void, or insignificant."). Because reading "property" to exclude money judgments would render the phrase "property . . . that constitutes . . . gross proceeds" meaningless, this Court finds that, for the purposes of § 982(a)(7), Congress defined "property" to include "gross proceeds."

(recognizing that "how the government can *enforce* [a money] judgment is a somewhat different question [than determining the amount of defendant's liability]"). As described more fully below, although the Government adequately satisfied the first requirement by establishing that it is entitled to $1,326,852.70 as a result of Poulin's health care fraud, it admittedly is unable to locate any such proceeds, and is therefore unable to satisfy the second requirement by identifying money traceable to the health care offense. Accordingly, because the Court is unable to issue a general money judgment allowing the Government to seize Defendant's financial assets indiscriminately, the Government must either, in the future, request an amendment to the forfeiture order to include property it later discovers is traceable to the health care offense, or seek substitute property in satisfaction of the gross proceeds to which it is entitled.

### a. forfeiture amount

Proving the amount of forfeiture to which the government is entitled will, in some cases, be a mere formality. For example, "[w]hen a defendant has been convicted of committing $1.6 million in money laundering offenses . . . the government has proved beyond a reasonable doubt that it is entitled to $1.6 million in criminal forfeiture . . . ." Voigt, 89 F.3d at 1084. In the instant case, the jury did not make a finding as to the total value of Poulin's health care fraud. As a result, to prove that forfeiture in the

19

amount requested is appropriate, the Government relies on testimony provided at trial by Sheila Stewart ("Stewart"), the director of the administrative contractor for Medicare, and Dan Johnson ("Johnson"), a health care fraud specialist administering the TRICARE program with the Department of Defense.

Evidence in the form of trial testimony already on the record can clearly be considered as part of the Court's forfeiture determination. FED. R. CRIM. PRO. 32.2(b)(1)(B). Stewart testified that the total amount of fraudulent billing paid by Medicare to the Defendant was $1,260,895.29. Similarly, Johnson testified that the total amount of fraudulent billing paid by TRICARE to the Defendant was $65,957.56. The Government argues that together this testimony demonstrates that the amount of gross proceeds traceable to the Defendant's health care offense is $1,326,852.70.[14]  The Court agrees, and finds that the testimony provided by witnesses Stewart and Johnson establishes by a preponderance of the evidence that $1,326,852.70 represents the total amount of money to which the Government is entitled from the Defendant.

## b. property traceable to the
## health care offense

Determining the appropriate amount of a money judgment does not end the Court's inquiry. Although the Government is entitled

---

[14]  The figures provided by the witnesses actually add up to $1,326,852.85.  However, this modest miscalculation works to Defendant's benefit.

to a money judgment in the amount of $1,326,852.70, this money judgment is limited by the provisions of 21 U.S.C. § 982(a)(7). See Vampire Nation, 451 F.3d at 202 ("[T]he *in personam* forfeiture judgment may also be distinguished from a general judgment *in personam*. The judgment *in personam* here is one in forfeiture and is limited by the provisions of 21 U.S.C. § 853(a) . . . ."). Section 982(a)(7) only permits forfeiture of "gross proceeds *traceable* to the commission of the [health care] offense." 18 U.S.C. § 982(a)(7) (emphasis added). Thus, under the plain language of § 982(a)(7), the Court cannot simply issue a non-specific money judgment that would allow the Government to seize any of Defendant's monetary assets. Such a general money judgment would plainly contravene the statute's express traceability requirement. Instead, a forfeiture money judgment[15] under § 982(a)(7) must be restricted to money, identified by the Government, that is "traceable" to the underlying health care

---

[15] Blacks Law Dictionary defines money judgment as "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." Blacks Law Dictionary 848(7th ed. 1999). As such, a money judgment simply authorizes the recipient to recover whatever money is ordered by a court. There is no reason that a money judgment cannot be tailored to authorize seizure of an identifiable and specific pool of money. Cf United States v. Casey, 444 F.3d 1071, 1076 (9th Cir. 2006) (observing that a forfeiture money judgment is not unlimited because it relates directly to the proceeds of the crime). But cf. Surgent, 2009 WL 2525137, at *15 (questioning whether a money judgment can ever be limited to specific property).

21

offense.[16]

For gross proceeds to be "traceable" to the offense they must be able to be tracked back to the commission of the crime; that is to say, there must be some nexus between the money sought and the health care offense.  See Blacks Law Dictionary 1499(7th ed. 1999) (defining the word "tracing" as "the process of tracking property's ownership or characteristics from the time of its origin to the present.").  For example, if a doctor receives a $10,000 check from Medicare as a result of fraudulent billing, cashes the check, and then places the money in an office safe, the government may, upon a finding of guilt, seize that cash as "gross proceeds traceable to the commission of the offense."  18 U.S.C. § 982(a)(7).  Similarly, if the doctor takes that $10,000 and purchases a car, then the government may seize the car as "property . . . derived . . . from gross proceeds traceable to the commission of the offense."  Id. If instead the doctor deposits the ill-gotten gain into an account that also contains legitimate receipts, and a restraining order is

---

[16]  Federal Rule of Criminal Procedure 32.2(b)(1)(A) requires "the court to determine whether the government has established the requisite nexus between the property and the offense."  FED. R. CRIM. PRO. 32.2(b)(1)(A).  The Fourth Circuit has adopted the "substantial connection" standard as the proper standard for determining whether a nexus exists between the property sought and the crime.  United States v. Herder, No. 1:07-cr-00423, slip op. at 18 (4th Cir. Feb. 11, 2010).  To the extent that the money judgment in this case is an order of forfeiture for specific property (i.e., gross proceeds traceable to the commission of the offense), the traceability requirement contained in § 982(a)(7) does the work of ensuring that there is a substantial connection between the money to be forfeited and the Defendant's crime.

issued soon thereafter prohibiting any future withdrawals, the government may still be able to divide the tainted and untainted money "with out difficulty." 21 U.S.C. § 853(p)(1)(e); see also United States v. Stewart, 185 F.3d 112, 129-30 (3d Cir. 1999) (finding that the government could trace $3 million worth of illicit proceeds stemming from a money laundering crime even though the defendant transferred the money into an account containing $160,000 in legitimate funds). Under such circumstances, having identified the illicit proceeds, the government could then enforce a money judgment for such funds. However, if the doctor instead deposits the money into an account that also contains legitimate receipts, and thereafter makes several withdrawals and additional deposits, the government will likely have a difficult time showing which money is "traceable" to the fraud and which is not.[17] It is the withdrawals, in particular, that create the difficulty. Therefore, as a result of such withdrawals, if the government cannot show which money is traceable to the fraud, then it will be unable to enforce a money judgment for those proceeds. Along the same lines, the government cannot obtain a general money judgment that allows it to seize funds, whether under the defendant's

---

[17]  In Voigt, the court found that illegal proceeds were commingled with other funds such that they could not be traced "without difficulty." 89 F.3d at 1087-88. Rather than read the traceability requirement out of the statute, the court held that the government must instead rely on the provision authorizing forfeiture of substitute property in order to satisfy the judgment against the defendant.  Id.

23

mattress or in a bank account, that the Defendant earned legally as such funds are not traceable to the health care offense. Accordingly, in the instant case, to secure a money judgment there must be some money belonging to Poulin that can be reasonably traced back to the commission of the health care fraud.[18]

The obvious public policy objection to such a reading of § 982(a)(7)'s traceability requirement is that, because money is fungible, a defendant can easily escape forfeiture by commingling illegally obtained proceeds with legitimate funds. But this argument proves too much in the context of judicial interpretation of the criminal forfeiture statutes at issue in this case, namely 18 U.S.C. § 982 and 21 U.S.C. § 853. Indeed, Congress has expressly provided for forfeiture under such circumstances in § 853(p) of Title 21. Section 853(p) states, in part, that if "as a result of any act or omission of the defendant," the offense property to which the government is entitled "has been commingled with other property which cannot be divided without difficulty," the "court shall order the forfeiture of any other property of the defendant, up to the value of [the offense property]." 21 U.S.C.

---

[18]     Under § 982(a)(7), the government could seek a money judgment that is limited to the gross proceeds traceable to the health care offense without first showing the court that such assets exists. However, under such circumstances, upon identifying such proceeds the government would be required to return to court and prove traceability beyond a preponderance of the evidence. See FED. R. CRIM. PRO. 32.2(e) (permitting the government to seek amendment to any forfeiture order to include property subject to forfeiture or substitute property).

§ 853(p). Therefore, § 853(p) requires courts to order a defendant to forfeit substitute property when the offense property originally sought, such as money representing gross proceeds from health care fraud, is unavailable. Such a substitute forfeiture provision would be a nullity if Congress envisioned that the Government could obtain a non-specific money judgment permitting it to seize any funds, including those not traceable to the offense, belonging to the defendant. See Voigt, 89 F.3d at 1085 (finding that the inclusion of the substitute asset provision evinces that the phrase "traceable to" should be interpreted to authorize forfeiture only of money linked to the underlying offense).

Admittedly, there are several cases in which courts interpreting the criminal forfeiture provisions applicable to violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act have held that the government is not required to identify proceeds traceable to the underlying crime in order for the court to impose a money judgment. See generally United States v. Robilotto, 828 F.2d 940, 949 (2d. Cir. 1987), cert denied, 494 U.S. 1011 (1988); United States v. Ginsburg, 773 F.2d 798, 802-03 (7th Cir. 1985) (en banc), cert denied, 475 U.S. 1011 (1986); United States v. Connor, 752 F.2d 566, 576 (11th Cir.), cert denied, 474 U.S. 821 (1985). However, these cases are neither controlling nor persuasive in the context of forfeiture sought for federal health care offenses. First, each of these cases

interprets the criminal forfeiture provisions embodied in 18 U.S.C. § 1963(a), which only apply to RICO violations. There is an appreciable difference between § 1963(a) and the health care forfeiture provisions relevant in this case. Notably, the RICO forfeiture statute is void of any language expressly requiring the government to identify proceeds *traceable to* the underlying criminal offense in order to obtain a money judgment. In stark contrast, § 982(a)(7), clearly limits forfeiture to "gross proceeds *traceable* to the commission of the [health care] offense." 18 U.S.C. § 982(a)(7) (emphasis added). Second, each of these cases was decided prior to Congress's decision to include within the RICO statute a provision requiring forfeiture of substitute property when the offense property is unavailable.[19] Because the RICO forfeiture statute lacked a provision requiring forfeiture of

---

[19] In <u>In re Billman</u>, the Fourth Circuit held that the government was entitled to a forfeiture judgment against a defendant convicted under the RICO statute even though the defendant had transferred the illegal proceeds outside the jurisdiction. 915 F.2d 916, 920 (4th Cir. 1990). In so doing, the Fourth Circuit relied on <u>Robilotto</u>, <u>Ginsburg</u>, and <u>Conner</u>. <u>Id.</u> Unlike those cases, however, <u>In re Billman</u> was decided after Congress had incorporated the substitute assets provision into the RICO statute. Significantly, in the context of a RICO provision containing no traceability requirement, the Fourth Circuit held that "[t]he government is not required to trace the proceeds of the RICO offense into a specific bank account in order to execute a forfeiture judgment. Instead, a forfeiture money judgment can be satisfied out of any of the defendant's assets." <u>Id.</u> (citations omitted). The Court is saying no less here today. Indeed, the Government need not trace proceeds to a specific account in order to be *entitled* to a forfeiture judgment. However, the tracing requirement, in the health care forfeiture statute, will limit how the government can enforce such a judgment.

26

substitute property, it is understandable that these courts construed the RICO forfeiture statute liberally to obviate any need for tracing in order to ensure that defendants could not escape forfeiture. A contrary interpretation, at that time, would have allowed defendants to evade forfeiture altogether by spending such proceeds or commingling such proceeds with legitimate receipts. Conversely, the express inclusion of a provision for forfeiture of substitute assets in § 982 militates against any inclination to construe the word "traceable" liberally in health care cases to permit non-specific money judgments in order to "effectuate the [forfeiture statute's] remedial purposes." 18 U.S.C. § 982(b) & 21 U.S.C. 853(o); see also Surgent, 2009 WL 2525137, at *11 (arguing that the substitute assets provisions in § 853(p) "fill the gap" in the forfeiture statute that troubled the courts in the RICO cases).

The Government has submitted a declaration from FBI Analyst Zoubul asserting that the proceeds traceable to the commission of this crime cannot be located. Because forfeiture is mandatory and an *in personam* action, the Government is entitled to the offense property, namely $1,326,852.70, even when the gross proceeds obtained by the Defendant from such a criminal offense are no longer available. See Vampire Nation, 451 F.3d at 201-02 ("Given that § 853 does not contain any language limiting the amount of money available in a forfeiture order to the value of the assets a defendant possesses at the time the order is issued, we think it

clear that an *in personam* forfeiture judgment may be entered for the full amount of the criminal proceeds."); cf. United States v. Amend, 791 F.2d 1120, 1127 n.6 (4th Cir.) (stating that under § 853, "the government need not have offered evidence that the forfeitable assets were still in existence at the time of [defendant's] conviction"), cert denied, 479 U.S. 930 (1986). A rule to the contrary would create a perverse incentive for defendants to dissipate proceeds in order to avoid forfeiture.

Accordingly, the Court finds that the Government is entitled to a money judgment in the amount of $1,326,852.70, which represents the gross proceeds fraudulently obtained by the Defendant. As a result, the Court further finds that a forfeiture money judgment for $1,326,852.70 in gross proceeds traceable to the health care offense is appropriate. Importantly, such a money judgment can only be satisfied by money traceable to the health offense. Because the Government has been unable to identify any money traceable to the Defendant's health care fraud, the Government will be unable to enforce such a money judgment at this time. However, if the Government locates gross proceeds traceable to the Defendant's health care fraud, the Government may seek an amendment to the forfeiture order requiring forfeiture of such traceable proceeds.[20] Alternatively, the Government may seek

---

[20] While an argument might be made that the better procedure is for the Court to determine an offense amount and require the government to prove traceability *before* entering a money judgment,

28

forfeiture of substitute property, in satisfaction of the money to which it is entitled, pursuant to 21 U.S.C. § 853(p).

## 4. Forfeiture of Substitute Property is Warranted

The Government contends that because it cannot locate the specific proceeds traceable to the criminal conduct, Defendant should forfeit substitute property to satisfy any money judgment pursuant to 21 U.S.C. § 853(p). Indeed, an order requiring a defendant to forfeit substitute property in a case involving a federal health care offense is authorized by the express incorporation of § 853(p) into § 982. 18 U.S.C. § 982(b); see Wingerter, 369 F. Supp. 2d at 805. Section 853(p) requires courts to order forfeiture of "any other property of the defendant" if, among other things, "as a result of any act or omission of the defendant" the property derived from the violation "cannot be located upon the exercise of due diligence" or "has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p). Accordingly, the Government must show: (1) that the statutory prerequisites have been met; (2) that the Defendant owns the substitute property sought, and (3) that the

---

doing so appears to contravene the procedure contemplated by Rule 32.2(e)(1)(A), which requires "an existing order of forfeiture." FED. R. CRIM. PRO. 32.2(e)(1)(A). Therefore, even though entry of a money judgment with a traceability limitation challenges traditional notions of civil money judgments, it more accurately reflects the statutory and rule procedure governing this area of the criminal forfeiture law.

value of the substitute property does not exceed the money judgment.

## a. statutory prerequisites

To prove that the prerequisites required by § 853(p) have been met, the Government offers a declaration by Angela Zoubul, an FBI Intelligence Analyst who has been involved in the Poulin investigation since 2006. At the outset, the Court finds Analyst Zoubul's declaration reliable because of her extensive involvement in Poulin's investigation and her previous testimony at trial. Analyst Zoubul states that she has been unable to locate any identifiable proceeds derived from the health care fraud offense in any of the Defendant's financial records. (Decl. para. 12.) She further explains that this is because the proceeds appear to have been commingled with legitimate billing receipts and then spent on both business and personal expenses. (Decl. para. 2 & 12.) Such declaration sufficiently demonstrates that proceeds derived from the subject health care fraud have "been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p)(1)(E). Such declaration also demonstrates that the gross proceeds "cannot be located upon the exercise of due diligence." Id. § 853(p)(1)(A). Therefore, the Court finds that, as a result of Defendant's actions, the property constituting the gross proceeds from the Defendant's health care fraud has been commingled such that it cannot be divided "without difficulty" and, as a

result, also cannot be located.  Accordingly, the Government may seek an order for forfeiture of substitute assets.

## b. ownership and value of property

The Government requests an order requiring Poulin to forfeit five items as substitute assets in lieu of the money judgment. These items consist of one item of real property and four vehicles. Analyst Zoubul attests that Defendant maintains at least a partial ownership interest in each item.  (Decl. paras. 5, 8, 10 & 11.) The total value of the items is approximately $934,503, which is significantly less than the requested money judgment. (Decl. para. 11.)  In addition, each of the items now sought as substitute property appeared in the forfeiture allegation contained in the Indictment. (Indict. at 11.)  Accordingly, a preliminary order of forfeiture for these assets is appropriate because the Government has satisfied the statutory prerequisites, shown that Defendant maintains an interest in the substitute assets sought, and demonstrated that the combined value of the assets is less than the total forfeiture amount requested.

The Government has therefore sufficiently shown that a preliminary order of forfeiture for a money judgment in the amount of $1,326,852.70, and for substitute assets in partial satisfaction of that amount, is appropriate.

31

## 5. Absence of Jury Determination
## on Forfeiture is Not Fatal

Defendant asserts that the Government cannot now seek a preliminary order of forfeiture because a jury determination on the issue is required under Rule 32.2. First, Defendant argues that Rule 32.2, as amended on December 1, 2009, requires the Court to ascertain whether a jury determination is desired.[21] Defendant maintains that, because no such determination was made, the issue of forfeiture is foreclosed. Second, even if Rule 32.2 is applied as written prior to amendment, Defendant claims he preserved his right to a jury determination on forfeiture.

With regard to the Defendant's first argument, it is clear that the amended rules will apply in pending proceedings only if feasible and just. 28 U.S.C. § 2074(a).[22] In this case, it would be impracticable to apply the jury determination provision given that the jury began deliberations well before the amendment took

---

[21]  "In any case tried before a jury, if the indictment or information states that the Government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." FED. R. CRIM. PRO. 32.2(b)(5)(A) (2009) (amended Dec. 1, 2009.).

[22]  "The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies." 28 U.S.C. § 2074(a)

effect. As a result, the Government may pursue forfeiture so long as the Defendant did not preserve his right to a jury determination on the matter. See FED. R. CRIM PRO. 32.2(b)(4) (2008) (amended 2009).

Second, Defendant claims that he adequately preserved his right to a jury determination even under the pre-amendment version of Rule 32.2. To invoke the right to a jury determination under the pre-amendment version, a defendant must expressly "request" that the Court retain the jury to decide the issue of forfeiture. See, e.g., Davis, 177 F. Supp. 2d at 481-82 ("Despite the fact that criminal forfeiture matters are no longer required by statute to be submitted to the jury, submission of such matters to the jury is still an available option upon the express request of either party."). Prior to dismissing the jury, the Court asked the parties whether there was "anything else that we need to address." At that time, counsel for both the Government and the Defendant privately conferred at the lectern and then advised the Court on the record that there was nothing additional for the jury. Defense counsel, Richard Klugh, represented to the Court at the January 11, 2010 motion hearing that during that conversation he understood that the Government seemed to indicate that it would not seek forfeiture.[23] Defense counsel maintains that, as a result,

---

[23] Mr. Klugh's co-counsel, David Barger, did not participate in the conversation.

Defendant did not forcefully invoke his right to a jury determination on forfeiture. Defense counsel's hazy recollection of the conversation, however, is at considerable odds with that of both Assistant United States Attorneys ("AUSAs") prosecuting the case. The Court finds particularly compelling the recollection of AUSA Katherine Martin, who specifically remembers that during this conversation she not only informed opposing counsel that the Government was not going to ask for a jury determination on forfeiture, but also advised him that if Defendant desired a jury determination it was up to him to ask for such determination.

In any event, if there was any confusion between the parties, little can be done now as the burden of making the request rested with the Defendant. Pre-amendment Rule 32.2 clearly requires Defendant to make an express request that the jury be retained in order to invoke that right. Here, Defendant made nothing that remotely resembled a request for a jury determination. Even if Defendant mistakenly thought that the Government would not pursue forfeiture in the future, this belief would not ease the clear requirements of Rule 32.2. Finally, if Defendant's counsel was concerned that the jury would react negatively to any request for a jury determination, as he indicated during oral argument on January 11, 2010, counsel could have easily asked the Court for a sidebar. No such request was made. As a result, Defendant waived

his right to have a jury decide the issue of forfeiture.[24]
Defendant's claim that the Government may not seek forfeiture,
because a jury determination on the issue is required, is therefore
rejected.

## 6. Failure to Account for Procedures
## Performed and Drugs Administered

Lastly, Defendant objects to the Government's motion on the
grounds that the proposed money judgment fails to differentiate
between payments received fraudulently and those to which Defendant

---

[24] The Court notes that a persuasive argument exists that,
when the government seeks forfeiture in the form of a money
judgment, there is no role for a jury. See United States v.
Tedder, 403 F.3d 836, 841 (7th Cir.) ("Although Rule 32.2 offers
the defendant a jury trial, this provision . . . is limited to the
nexus between the funds and the crime; Rule 32.2 does not entitle
the accused to a jury's decision on the amount of forfeiture."),
cert denied, 546 U.S. 1075 (2005); United States v. Galestro, No.
06-CR-285, 2008 WL 2783360, at *11 (E.D.N.Y. July 15, 2008)
(finding that when a money judgment is sought the defendant "is not
entitled to have the jury decide the amount of forfeiture"); United
States v. Delgado, No. 8:05-CV-533-T-24TGW, 2006 WL 2460656, at *1
(M.D. Fla. Aug. 23, 2006) ("[B]ecause the Government is now seeking
only a money judgment against Delgado, and not forfeiture of real
property, or a car or bank accounts, no nexus determination needs
to be made and he does not have a right to a jury determination on
the forfeiture."); United States v. Reiner, 393 F. Supp. 2d 52, 54-
57 (D. Me. 2005) (holding it is solely for the court to decide the
amount of any money judgment). But see Surgent, 2009 WL 2525137,
at *20-21 (finding that even in money judgment cases the government
must first identify some forfeitable property and establish its
nexus to the offense to the satisfaction of a jury before the court
can determine the appropriate money judgment amount). Because
Defendant clearly failed to request a jury determination in this
case, the Court need not address whether the right to a jury
determination applies to money judgment forfeitures pursuant to 18
U.S.C. § 982(a)(7).

was entitled. Defendant argues that any money judgment must take into consideration the drugs actually administered and examinations actually performed. In short, Defendant argues that it would be improper to require him to forfeit the *gross* proceeds traceable to the fraudulent billing rather than merely the *net* proceeds resulting from the fraud.

Despite Defendant's arguments to the contrary, the statutory language requires forfeiture of gross, rather than net, proceeds. Section 982(a)(7) provides that "[t]he court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from *gross proceeds* traceable to the commission of the offense." 18 U.S.C. 982(a)(7) (emphasis added). Therefore, on its face, the statute contemplates forfeiture of "gross proceeds," not "net proceeds." Moreover, arguments identical to the one now raised by the Defendant have been rejected by courts in similar circumstances because the forfeiture statute plainly states that *gross* proceeds must be forfeited. See United States v. Boesen, 473 F. Supp. 2d 932, 954 (N.D. Iowa 2007) ("To allow the perpetrator of a fraud to mitigate his eventual forfeiture exposure by such a set-off procedure would seem fundamentally inconsistent with the purpose of the statute and challenging, if not impossible, in its application from case to case."); United States v. Brown, No 3:06-cr-204-J-33MR, 2007 WL

36

470445, at *6 (M.D. Fl. Feb. 13, 2007) (rejecting defendant's request for forfeiture to be limited to net, not gross, proceeds in a health care fraud action).

Defendant seeks to distinguish Boesen from the instant action by arguing that the defendant in that case sought to set-off the total forfeiture amount with the cost of procedures that were provided but never billed. However in Boesen, the defendant over billed for medical procedures he performed; that is to say, he performed one procedure and billed for another, more expensive, procedure. 473 F. Supp. 2d. at 953. At the forfeiture stage, defendant argued that any money judgment imposed should account for the payment he would have received if he had simply billed for the procedures he had performed. Id. The court rejected this argument and refused to include any set-off in the forfeiture order. Id. at 954.

It is unclear how the argument presented in Boesen is different from that which the Defendant advances here. Just as in Boesen, Defendant billed for one procedure but actually performed another. Defendant now wishes to reduce the total forfeiture amount by the reimbursement he would have received if he had billed Medicare and TRICARE correctly. This plainly contradicts the statutory language requiring defendants to forfeit the "gross proceeds" derived from the health care offense. Such a provision is sensible, because limiting the Government to net proceeds would

37

have less deterrent effect. Under such a rule, a person contemplating health care fraud could calculate that the only financial consequence of being caught would be having to return ill-gotten gains to which he was never entitled. The plain statutory language indicates that this was not Congress's intent.

Defendant also attempts to support his argument for limiting forfeiture to net proceeds by citing United States v. Santos, 128 S. Ct. 2020 (2008), for the proposition that the plain meaning of the term "proceeds" means net profits. Notwithstanding the fact that the statute at issue here includes the modifier "gross," existing precedent in the Fourth Circuit interprets "proceeds" to mean "receipts" rather than net profit. See McHan, 101 F.3d at 1041 (interpreting "gross proceeds" in § 853 to mean total receipts, not net profits). Furthermore, albeit in an unpublished decision, a persuasive opinion of the Fourth Circuit has held that Santos resulted in a plurality decision that should be interpreted narrowly as applying only to the specific facts in that case, namely money laundering cases involving gambling. United States v. Howard, 309 Fed. Appx. 760, 771 (4th Cir. 2009) ("Because Santos does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that 'proceeds' means 'receipts.'") (unpublished); see also States v. Okun, No. 3:08-CR-132, 2009 WL 414012, at *10 (E.D. Va. Feb. 18, 2009)

("[P]recedent which provides the definition of proceeds to be receipts in contexts other than illegal gambling still binds this court."); <u>United States v. Prince</u>, 627 F. Supp. 2d 863, 871 (W.D. Tenn. 2008) (holding that health care fraud triggers forfeiture of gross receipts even after <u>Santos</u>). As a result, this Court will apply what it understands to be controlling Fourth Circuit precedent defining proceeds as receipts and grant the Government's request for forfeiture of gross proceeds.

The Court therefore rejects Defendant's claim that the amount of any money judgment ordered must account for payments he would have received for drugs actually administered and procedures actually performed.

### III. CONCLUSION

For the reasons provided above, the Court has today granted. in part, the Government's Motion for Preliminary Order of Forfeiture.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion to counsel for Defendant and to the Assistant United States Attorney.

/s/ Mark

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 12, 2010